All right. We're ready to hear argument in Snodgrass v. Gilbert. Ms. Oate. Thank you, Your Honors, and may it please the Court. My name is Nina Oate, and I represent the appellant Kevin Snodgrass. The District Court in this case made a series of both factual and legal errors related to Mr. Snodgrass's claim for First Amendment retaliation and use of excessive force. This Court should reverse. While there are a number of errors in the District Court proceedings, there are three errors in particular that we'd like to raise this morning. First, the District Court should not have granted summary judgment on Mr. Snodgrass's claim that multiple defendants retaliated against him for First Amendment activity by labeling him a snitch. Its determination that labeling an inmate a snitch is not an adverse act for purposes of a retaliation claim is inconsistent with the substantial case law recognizing how dangerous it is for an incarcerated person to be labeled as a snitch. Second, the District Court failed to account for numerous disputes of material fact when it granted summary judgment for defendants on Mr. Snodgrass's excessive force claim. A reasonable jury could find that Defendant Gilbert acted with impermissible motive when he repeatedly deployed pepper spray into Mr. Snodgrass's face and eyes. And third, the District Court's determination that Mr. Snodgrass failed to establish that he was kept in segregated housing in retaliation for protected First Amendment conduct both misapplied the facts contained in the record and the law as established by this Court in Martin v. Duffy. Starting first with the first retaliation claim related to the snitch label. The District Court erred when it determined that labeling an inmate a snitch does not constitute an adverse act for purposes of a First Amendment retaliation claim. It is common knowledge that being labeled a snitch puts a prisoner at serious risk of harm. Prison culture makes it incredibly dangerous for an inmate to even risk being perceived as a snitch. This Court said exactly that in Miller v. Leathers when it acknowledged that, quote, it is impossible to minimize the possible consequences of such a label. It's also the reason that the Sixth, the Seventh, and the Ninth Circuit have found that this label is sufficient to support a retaliation claim. And why at least six other circuits have acknowledged that— I think one of the problems Mr. Snodgrass has here is that he listed a potential witness and the witness that he listed, the inmate witness, who was his witness, said, I was too far away. I did not hear anyone call him a snitch. Your Honor, at the summary judgment stage, when Mr. Snodgrass has created a dispute of material fact and the facts need to be taken in the light most favorable to him at that stage, he disputes that fact. He asserts that he was called that and the officers dispute that, and at that stage that's what matters for purposes of determining whether or not a reasonable jury would be able to find that this was an act of retaliation. I thought what would matter is if other people heard it, right? I mean, hypothetically, if the officer leaned down and whispered in his ear, snitch, right, like that wouldn't be a retaliation. So the fact that he was called a snitch, I don't think you're arguing that that's the problem. I took Judge Benjamin's point to be that what would be retaliation is not, you know, in the quiet of a private moment, suggesting that someone was a snitch. It is the announcement of it so that others can hear. Yes, Your Honor, and I apologize if I misunderstood your question, Judge Benjamin. Well, there's two issues. First, the second instance in which Mr. Snodgrass was called a snitch, the inmates responded in such a way that makes it clear that they did hear because once Mr. Snodgrass was called a snitch by an officer, the other inmates began to chant that he was a snitch in response. The only reasonable inference from that is that they overheard the defendant calling him a snitch because it's unlikely that they would have just spontaneously began to chant that. So in the facts of this case, while yes, there would be a distinguishment there, the facts of this case do not reflect that that distinguishment matters for purposes of this case. Given the risk that is associated with being called a snitch, it certainly constitutes an adverse act, which is for purposes of a retaliation claim, it simply has to be more than a de minimis inconvenience. And so if an act that puts a prisoner at such risk of harm. What's the what's the First Amendment activity that you're alleging here? So there are there are a couple of different issues, but on this particular claim, it has to do with Mr. Snodgrass filing affidavit in support of another inmate in his lawsuit. And so what is what law do I look for to find that to be a clearly protected right? I mean, there's the right to petition, but the right to petition, to my knowledge, has not been held to extend to the support of another's action. It includes your own petition. Right. So you may not at least some circuits. I don't think we've addressed this question, but some circuits have suggested it does not extend to testifying or providing information for another person's petition. You have a First Amendment right only to petition for yourself. Where would I look to to find that, you know, serving as a witness in somebody else's petition constitutes a well-established constitutional right? Your Honor, the the right would be the the right to participate in civil litigation. And I apologize. I don't have the case name in front of me. I'm happy to submit that to the court after argument. But you think your your point is you think there's a Supreme Court case that says that you have a right to participate? I mean, I can look as well as you can, but that there's a protected constitutional right not to petition. Right. The petition right in the First Amendment is one thing. But there's some other right that gives you a constitutional protected right to participate in someone else's litigation. In in civil litigation. I apologize again that I don't have the case name in front of me that distinguishes the two. But the the First Amendment conduct that we are that we put forth here is that he participated in civil litigation. So turning back again to this idea of an adverse act under this court's precedent for something to be an adverse act, it simply has to be more than a de minimis inconvenience. The bars for that is not especially high. And in this case, when one considers that the snitch risk is so high, it has to be more than de minimis inconvenience. This is especially true when we look to many of the cases in other circuits that have examined this snitch label issue, because most of those cases have considered it in the context of an Eighth Amendment claim. So those those courts have determined that if putting a if putting a inmate at a substantial risk of serious harm, if it's so dangerous that it puts an inmate at a substantial risk of serious harm, it is certainly more than a de minimis inconvenience. Appellees also make much of the fact that Mr. Snodgrass, quote, snitch on an officer rather than on another inmate. But that distinction is not relevant here for two reasons. First, the majority of the circuit courts who have considered this issue have not identified that to be any any meaningful difference. And second of all, on the facts of this case, as I mentioned before, the inmates response suggests that they did not understand him to be snitching on some in a way that benefited his interests. I'd like to turn now to Mr. Snodgrass' excessive force claim. The district court erred both by improperly crediting the defendant's version of events at the summary judgment stage and by misapplying the the factors that this court uses to assess an officer's state of mind when using force established by the Supreme Court in Whitley versus Albers. The most notable errors are related to the need for force at all. Both the initial use of pepper spray, but most importantly, with regard to the second and third spray. Didn't you did Mr. Snodgrass say that he was not in his pleadings? He said that he was not cooperating. Your Honor, with regard to the first spray, he was originally protesting being cuffed because he believed, based on his security level and his experience at that security level, that the Department of Corrections policy did not require him to be cuffed. However, Defendant Gilbert's reasoning for spraying him, at least as set forth in his affidavit with the motion for summary judgment, was that Mr. Snodgrass threatened him with bodily harm, which is a disputed fact. I think even in the complaint, he says that he was not compliant and after the third spray, he complied. Your Honor, again, well, there's two answers to your question. The first is that while his allegation in the complaint is not entirely clear, throughout the briefing, he made clear that he was neither threatening nor failing to comply once he had been sprayed the first time. It's also just by common sense. It's hard to imagine how he could have been failing to comply when the first spray blinded him and choked him. So if he can't see and he can't breathe… Well, I think their argument to that is going to be that, in the officer's affidavit, was that the first spray and the second spray were ineffective. They didn't work. Your Honor, I believe… In answering that question, it would just help me a great deal. If you can tell me why he… You made some arguments about the second and third spray on appeal, but they're new, I think. So if you could limit it to what's in the complaint or what facts would dispute the officer's indication that there were two minutes passed and there were these sprays and he was ineffective. That all seems consistent with his complaint at JA-27. You've suggested an alternative set of facts that I don't find in the district court, but can you help me put that together? Yes, Your Honor. If I'm understanding your question correctly, what that really comes down to, though, is that ultimately the reasoning that Officer Gilbert provided for the initial spray was that he was being… Let me make sure. I totally understand your argument that there's no reason to use pepper spray at all. I understand that argument. I want to bracket that. I thought you were turning to the second and third spray and saying he wasn't given an opportunity to comply and that those, even if it was justified at stage one, it was not at two and three. So the second and the third, and Judge Benjamin was talking about how the officers said that they were ineffective, that that was their response, and what I'm trying to understand is, what evidence was the district court supposed to look at that contradicted the officers' information that they were ineffective and that's why they engaged in the second and third? Your Honor, the affidavit that Defendant Gilbert submitted with the motion for summary judgment did not provide any explanation for why these second and third sprays were necessary. This description that they were ineffective did not come up until later. It's in the report, right? That's from the report. That's the original report, right? That's in the officer's report. What I'm trying to figure out is whether your client contradicted that. Your brief says very artfully that there's no evidence that shows that he was given an opportunity to comply, but I think that's probably not true given the record that we have. What I don't see is something with your client saying that he wasn't given the opportunity to comply or otherwise didn't just continue to refuse to participate. Your Honor, I don't have a page number off the top of my head. I'm happy to submit it to the court. You don't need to do that. That's fine. But what it really, I mean what I'd like to really bring it back to Then what are you basing the dispute of fact on? A few things, Your Honor. The first is that Mr. Snodgrass disputes that he threatened him with bodily harm because that was Gilbert's initial reason for deploying the spray. That's what he said was the reason for deploying the spray, which Mr. Snodgrass disputes. And again, at summary judgment, we have to take the facts. For the first time, but Mr. Snodgrass does not dispute that he was refusing to be cuffed to come out of his cell before the first spray, correct? Initially correct, yes. Okay. So what's your next thing that shows there was a dispute of fact? Well, the next dispute of fact was that Mr. Snodgrass was, he was, he makes clear that he was incapacitated because he was blinded and choking. So he was unable to put up the quote-unquote fight. No, no. In fact, exactly the opposite, right? I mean, he says, I was blinded and choking and complied with being restrained, right? He says, while I was blinded and choking from the OC spray, I, he's doing it in the third person, but I complied with being restrained. So like, I understand that this is the argument you're trying to make on appeal, but he says the opposite in his complaint. Your Honor, this was appellant's understanding from the subsequent, from the complaint taken together with the subsequent filings and given this court's practice of, you know, giving discretion to pro se plaintiffs who may not necessarily craft a complaint exactly the way that a lawyer would, who's able to. We typically, we typically don't do that in like describing what happened, right? I mean, we do liberally construe complaints because people aren't lawyers, right? And so if you get the words wrong, we sort of give you a little bit of credit, right? But what we don't typically do is like add factual allegations that are inconsistent with the ones that you've made, right? That's the line. I get we're nicer to pro se's than non, but we don't like make up facts for them. Your Honor, respectfully, I wouldn't agree that we are making up facts. It's the facts as reflected in the report as well that show that several minutes passed between each spray. So we know that this took place over a long period of time, although there is some dispute over how long it took because Mr. Snodgrass requested the video footage and was denied it. And even though the report also states that there's video footage, the defendants did not provide it to the district court. So it's not just what is in the complaint. It's in the complaint combined with the other facts that we know that are from the report, from the subsequent briefing that paint this larger picture. All right. You have some time reserved in rebuttal. Thank you. Thank you. Mr. Chestnut. Good afternoon. May it please the court. Brendan Chestnut on behalf of the defendants. The district court properly granted judgment on Mr. Snodgrass's claims. First, for the excessive force claim, it properly granted summary judgment because. I think it would be good if you spoke up a little bit or moved the microphone closer. Yes. Is that better? All right. So Mr. Snodgrass, the excessive force claim was properly granted against him because he refused orders to leave his cell, despite the fact that there's concerns about him having contraband in the cell and that they needed to move him to another section. And that was true for the first spray, clearly. What about for the second and third sprays? Yes, Your Honor. So I think one thing here is there's something in their reply brief. Mr. Snodgrass mentioned that there's a factual dispute here about how long this was, and I don't think that that's true, or at least it wasn't true until their reply brief. Their opening brief says that there was two minutes between the first and second spray and then three minutes in between them. The reason that he was sprayed on the second and third times is that he was not complying with the orders. They spent 30 minutes talking to him, trying to convince him. Opposing counsel says there's a dispute of fact on that, that the district court didn't credit. What's your response to that? So he didn't make any factual allegations or dispute the timing that was in the affidavits that were submitted on summary judgment. And even their opening brief does not bring up that dispute. Am I right? When I read the district court's order, the district court, and I'm trying to read his briefing in the light most favorable to him, the district court understood him to really be making this I have a right to not be cuffed argument and rejected that argument, but did not address this sort of new argument, which is even if force was justified at the first spray, his noncompliance justified the second and third spray. I understood the reason the district court didn't address that is the plaintiff here didn't make those arguments. Am I right about that? You know the record better than I do. Is that a fair characterization or did the district court just miss arguments that Mr. Snodgrass had made? No, his argument at the summary judgment briefing was that he had a right to refuse that and be able to leave, and then he complied after the third time. And your view is that for us to find that the district court erred here, it had to err on that ground. We don't typically find an error in civil cases when the argument wasn't made below. I think that's correct. I think you could also affirm on the fact that on those the district court did explain that the second and third were necessary because he was still continuing to refuse to leave his cell, and in doing so the prison officials have a responsibility and obligation to enforce order in there, and that is what they were using that force to do. In terms of – he also mentioned some of the complaints about not being able to take a shower afterwards, but his own documents actually acknowledge that he was given – once he was removed from the cell, he was placed in the shower, he cleaned off, saw the nurse, and then was placed in a separate holding cell. So moving – I'd like to move from that to his First Amendment retaliation claim. Here the court conducted two different trials on his First Amendment claims here. It made substantial findings of fact. It assessed credibility based on its observing the testimony over those three different days of trial and over the two different trials, and it found that the defendants were more credible and that Mr. Snodgrass was not as credible, and it did that for a few reasons, one of which is Mr. Snodgrass in several different places asserted that he was told that he was not progressing through the step-down program due to – that he was not told why he was progressing through the step-down program. But he then acknowledges later in his testimony that actually he was told it on not just one occasion, but he says on multiple occasions. His own witness says that the witness overheard him receive warnings about respect and that he was told this, and the testimony from the officers was that they had given him this warning. Duncan specifically told him that one of the issues with respect was that it was his swearing or use of profanities. So this wasn't a question for him at the trial. Yes, Your Honor. I don't have a question. All right. Moving from that, the other issue that he raised is that there was a snitch allegation in his original complaint that was not addressed. And the district court going through construed his complaint and his other allegations and read that as the snitch allegation was supporting his other factual allegations about why he was going through the step-down program. And it referenced that in several different places. And in doing that, it allowed – it cited his testimony on this and said that he had raised a triable issue of fact and it sent the retaliation claims to trial. And at trial, he did try and call one of his witnesses as one of the witnesses declined to come. Another witness that came to the trial said that they never heard comments about snitching. And so there was no evidence there for the judge to consider on that point about whether or not he had made out that allegation. That allegation was not factually supported once you get to the trial record. There are no further questions. All right. Thank you. Affirm. Thank you. I'm sorry. I cut you off. You said you asked that we affirm, correct? Yes. Your Honors, there are two points that I'd like to address from Apelli's argument. The first is with regard to the step-down retaliation claim. Apelli spoke much of the factual findings from the district court in the most recent opinion regarding the step-down retaliation claims. But one of the biggest issues with that claim was a question of law rather than a question of fact, which we do not afford that same level of discretion that calls for de novo review. This is with regard to the step-down from SM0 to SM1, so from more restrictive to less restrictive. The problem with the district court's opinion on that question was that Snodgrass did not establish in the court's view that being kept in segregated housing for 128 days rather than the required 90 days was not an adverse act. And so this determination was based on the court's decision that as a matter of law, 128 days is approximately 90 days for purposes of an adverse act. So for that issue, we do not afford the same level of discretion that we would provide on a factual decision or a question of crediting testimony. The second issue that I would like to raise is in regard to the first retaliation claim regarding the snitch issue. This court has held that in, again, pro se cases when a general retaliation claim is brought but there are specific factual allegations underlying it, that is sufficient to broaden the analysis and to understand that, again, pro se plaintiffs are just not as competent at perfectly crafting the complaint as an attorney would be. That was the case in Booker too. And so in this case, even though the district court was not able to or did not understand that Mr. Snodgrass was trying to bring that as a separate claim, he did understand it to be related to the retaliation claim in general. The district court's opinion shows the mention of the snitch within the discussion of the retaliation claim of the step-down program. But with regard to Apelli's argument that the court understood it to be part of the Eighth Amendment argument, the district court's opinion just simply does not reflect that. So for these reasons, your honors, we respectfully request that this court reverse. All right, thank you. We're going to come down and greet counsel and then, well, adjourn court until tomorrow morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Stephanie D. Thacker, Julius N. Richardson, DeAndrea Gist Benjamin